**<u>NOT FOR PUBLICATION</u>**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

```
QUA 'SHIC COLVIN,              :
a/k/a                         :
QUA 'SHIC KEE KEE COLVIN,      :
                              :    Civil Action No. 07-2615 (PGS)
            Petitioner,       :
                              :
       v.                     :    OPINION
                              :
MIKE POWERS, et al.,          :
                              :
            Respondents.      :
```

**APPEARANCES:**

Petitioner <u>pro</u> <u>se</u>
Qua 'Shic Colvin
Lock Bag R
East Jersey State Prison
Rahway, NJ 07065

Counsel for Respondents
Steven E. Braun
Ofc. of Passaic Co. Prosecutor
401 Grand Street
Paterson, NJ 07505-2095

**SHERIDAN**, District Judge

Petitioner Qua 'Shic Colvin, a prisoner currently confined at East Jersey State Prison in Rahway, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The respondents are Warden Mike Powers and the Attorney General of New Jersey.

For the reasons stated herein, the Petition must be denied.

I.   BACKGROUND

A.   Factual Background

The relevant facts are set forth in the opinion of the Superior Court of New Jersey, Appellate Division.[1]

> The facts presented at trial were that at about 10:00 p.m. on December 30, 1999, while standing outside 115 E. Holsman Street in Paterson with Sean Smith, Colvin saw Anthony King and another male, later identified as George Freeman, in a Jeep.  Colvin ran into the building to his aunt's apartment to retrieve his gun.  As he returned he saw King in the entrance holding a silver gun in his left hand.  When King threatened to kill Colvin, Smith asked King to move so he could leave his apartment.  Colvin left through the back door and ran about three blocks, and then returned.   King and Freeman then left and went to a gas station.

> They returned and Colvin saw them walking toward him and reaching for what he thought were guns.  Colvin fired his gun and killed King and wounded Freeman. Colvin went to his house on 15th Avenue in Paterson. He then went to a pay phone on Park Avenue to call his girlfriend.  When he returned home, his aunt and girlfriend were waiting and he told them what had happened.  He put his gun into a bag and asked his aunt to hide it at his grandmother's apartment.

> After being shot, Freeman ran into a nearby business, Kennedy Chicken, and telephoned police.  The police arrived and found King on the ground with money and narcotics near him.  The police found Freeman at Kennedy Chicken and transported him to a hospital.  The police found Colvin's gun at his grandmother's home and

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

determined that he was the shooter.  Colvin was arrested on December 31, 1999.

Freeman first gave an oral statement to the police in which he said that he and King went to E. Holsman Street looking for Colvin.  In a written statement he said King went there to hustle to make some money.  However, he testified that he did not know why King went there and gave a different version of the events leading up to the shooting.  He testified that he was shocked when King jumped from the car with a gun and chased Colvin into 115 E. Holsman Street.  They left the area, drove to get gas, returned to the area and parked around the corner.  They then walked down the street and saw Colvin walk out into the middle of the street and start shooting.

King's death ended an ongoing feud between him and Colvin.  There was testimony that on February 27, 1999, King had stabbed Colvin in the throat at a dice game.  On December 6, 1999, Colvin hit King with a baseball bat.  On December 30, 1999, the day of the shooting, King threatened to kill Colvin after following him into the building.

The State presented various police witnesses and a ballistics expert.  Detective Zahn testified as to debris that was found pertaining to King's shooting, including a spent shell casing found in the street, and a bullet found near an abandoned house at 106 E. Holsman Street.  Detective Zahn testified that he showed a picture of Colvin to Freeman to identify.

Detective Robinson testified that Colvin said he bought his gun for $600 to protect himself from King who had threatened him with a silver gun on the inside staircase of 115 E. Holsman Street on the date of the fatal shooting, and that he retrieved his gun before he went into the street, where he fired it.

Over the objection of defense counsel, an investigator from the Passaic County prosecutor's office testified that he timed a trip from E. Holsman Street to a gas station on Broadway via the route described by Freeman.  It took him nine minutes at 10:00 a.m.

> At trial the judge also allowed into evidence
> photographs depicting King's face and shoulders, his
> head, and the bullet hole in his chest over the
> objection of defense counsel.  It was stipulated that
> King still had residual injuries from the baseball bat
> incident, but they did not cause his death.

(Opinion of Superior Court of New Jersey, Appellate Division at

4-6, Sept. 26, 2003.)

B.   Procedural History

On October 26, 2001, at the conclusion of a jury trial in

the Superior Court of New Jersey, Law Division, Passaic County,

Petitioner was found guilty of first-degree aggravated

manslaughter, N.J.S.A. 2C:11-4(a), as a lesser-included offense

of murder, second-degree possession of a weapon for an unlawful

purpose, N.J.S.A. 2C:39-4(a), third-degree unlawful possession of

a weapon, N.J.S.A. 2C:39-5(b), and second-degree aggravated

assault, N.J.S.A. 2C:12-1(b)(1).  Pursuant to a plea agreement,

Petitioner thereafter entered a plea of guilty on November 27,

2001, to a previously-severed charge of possession of a

controlled dangerous substance with intent to distribute within

1,000 feet of school property.

Petitioner was sentenced on January 25, 2002, under the No

Early Release Act, to an aggregate custodial term of 29 years,

with a parole ineligibility period of 22 years, 4 months, and 26

days.

On direct appeal, Petitioner raised the following claims:

the jury instructions were erroneous and deprived Petitioner of

4

his constitutional right to a fair trial, the verdict was against the weight of the evidence, prosecutorial misconduct prejudiced his right to a fair trial, the trial judge erroneously admitted certain evidence (including autopsy photographs), he was denied the effective assistance of counsel, and the sentence imposed was excessive (not raised below).  On September 26, 2003, the Superior Court of New Jersey, Appellate Division, affirmed the conviction and sentence.  On January 29, 2004, the Supreme Court of New Jersey denied certification.  State v. Colvin, 178 N.J. 455 (2004).

On May 11, 2004, Petitioner filed a petition for post-conviction relief, which was denied by the trial court on June 21, 2005.  That petition raised the claims that trial judge improperly sentenced Petitioner to terms greater than the presumptive term, to a discretionary period of parole ineligibility, and to consecutive sentences.  The Appellate Division affirmed the denial of relief.  State v. Colvin, 2006 WL 2919063 (N.J. Super. App. Div. 2006).  The Supreme Court of New Jersey denied certification on January 12, 2007.  State v. Colvin, 189 N.J. 428 (2007).  This Petition followed.

Here, Petitioner asserts the following claims: (1) the verdict was against the weight of the evidence; (2) the jury instructions were erroneous and confusing; (3) the trial court improperly sentenced Petitioner to terms greater than the

5

presumptive terms; (4) the trial court improperly sentenced Petitioner to consecutive terms.

Respondents have answered that the Petition should be denied as meritless.  Petitioner has not filed a reply.  This matter is ready for disposition.

## II.  28 U.S.C. § 2254

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the

state court confronts a set of facts that are materially
indistinguishable from a decision of th[e] Court and nevertheless
arrives at a result different from [the Court's] precedent."
Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J.,
for the Court, Part II).  A state court decision "involve[s] an
unreasonable application" of federal law "if the state court
identifies the correct governing legal rule from [the Supreme]
Court's cases but unreasonably applies it to the facts of the
particular state prisoner's case," and may involve an
"unreasonable application" of federal law "if the state court
either unreasonably extends a legal principle from [the Supreme
Court's] precedent to a new context where it should not apply or
unreasonably refuses to extend that principle to a new context
where it should apply," (although the Supreme Court expressly
declined to decide the latter).  Id. at 407-09.  To be an
"unreasonable application" of clearly established federal law,
the state court's application must be objectively unreasonable.
Id. at 409.  In determining whether the state court's application
of Supreme Court precedent was objectively unreasonable, a habeas
court may consider the decisions of inferior federal courts.
Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

Even a summary adjudication by the state court on the merits
of a claim is entitled to § 2254(d) deference.  Chadwick v.
Janecka, 302 F.3d 107, 116 (3d Cir. 2002) (citing Weeks v.

_Angelone_, 528 U.S. 225, 237 (2000)).  With respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment.  _See Hameen v. State of Delaware_, 212 F.3d 226, 248 (3d Cir. 2000), _cert. denied_, 532 U.S. 924 (2001); _Purnell v. Hendricks_, 2000 WL 1523144, *6 n.4 (D.N.J. 2000).  _See also Schoenberger v. Russell_, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and cases discussed therein).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal caselaw, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent." _Priester v. Vaughn_, 382 F.3d 394, 398 (3d Cir. 2004) (citing _Early v. Packer_, 537 U.S. 3 (2002); _Woodford v. Visciotti_, 537 U.S. 19 (2002)).

Finally, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  _Estelle v. Gamble_, 429 U.S. 97, 106 (1976); _Haines v. Kerner_, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  _See Royce v. Hahn_, 151 F.3d 116, 118 (3d Cir. 1998); _Lewis v. Attorney General_, 878 F.2d 714, 721-22 (3d Cir. 1989); _United States v. Brierley_, 414 F.2d 552, 555 (3d Cir. 1969), _cert. denied_, 399 U.S. 912 (1970).

III.   ANALYSIS

A.   Sufficiency of the Evidence

Petitioner asserts that his convictions on both the homicide charge and the charge of possession of a weapon for an unlawful purpose are against the weight of the evidence.  The Appellate Division rejected this claim on direct appeal.

> Colvin argues that his convictions should be vacated because the State failed to meet its burden on the charges of homicide and possession of a weapon for an unlawful purpose.  He contends that the judge erred by failing to sua sponte order dismissal of the case.  There was no request, either at the end of the State's case or at the close of the evidence, or in any new trial motion.  Hence, a weight of the evidence issue is deemed waived.  R. 2:10-1; State v. Johnson, 203 N.J. Super. 127, 133 (App. Div.), certif. denied, 102 N.J. 312 (1985).

> A jury verdict should be set aside only when it "clearly and convincingly appears that there was a miscarriage of justice under the law."  R. 3:20-1.  R. 2:10-1; State v. Sims, 65 N.J. 359, 373-374 (1974).

> To prove aggravated manslaughter (N.J.S.A. 2C:11-4a) the State must produce evidence that the defendant caused death under circumstances manifesting extreme indifference to human life.  State v. Radziwil, 235 N.J. Super. 557, 569 (App. Div. 1989), aff'd, 121 N.J. 527 (1990).  To demonstrate recklessness, the State must prove that the defendant "consciously disregarded a substantial and unjustifiable risk."  State v. Curtis, 195 N.J. super. 354, 364 (App. Div.), certif. denied, 99 N.J. 212 (1984).

> The State produced evidence that Colvin caused King's death, and that King threatened Colvin with a gun less than one hour before the fatal shooting.  This evidence also demonstrated that Colvin was armed and gave rise to an inference that he consciously disregarded the risk that King was armed when he went into the street and shot King under circumstances manifesting extreme indifference to human life.  The

9

evidence fully supported the conviction of aggravated
manslaughter.  The State also produced sufficient
evidence of possession of the weapon for an unlawful
purpose.

    The evidence was to the effect that Colvin
possessed a handgun, which qualifies as a firearm under
N.J.S.A. 2C:39-1f, that he deliberately retrieved the
handgun to use against King, and that he intended to
use the weapon to either assault or kill King contrary
to N.J.S.A. 2C:12-1 or 2C:12-3.  This evidence was
sufficient for the jury's finding of guilt.  State v.
Harmon, 104 N.J. 189, 212 (1986).

    Thus, on the merits, and in the alternative, the
verdict was not against the weight of the evidence.
There was sufficient evidence presented to establish
beyond a reasonable doubt that Colvin was guilty of
aggravated manslaughter and possession of a weapon for
an unlawful purpose.

(Opinion of Appellate Division at 19-21, Sept. 26, 2003.)

    Petitioner has not directed this Court to any alleged

specific error in the decision of the Appellate Division.

    A claim that the jury's verdict was against the weight of

the evidence raises a due process concern.  Only where, "after

viewing the evidence in the light most favorable to the

prosecution, [no] rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt" should

the writ issue.  Jackson v. Virginia, 443 U.S. 307, 319 (1979).

This standard must be applied "with explicit reference to the

elements of the criminal offense as defined by state law."

Jackson, 443 U.S. at 324, n.16.  See also Orban v. Vaughn, 123

F.3d 727 (3d Cir. 1997), cert. denied, 522 U.S. 1059 (1998).  As

noted above, state court factual determinations are presumed to

be correct.  See Werts v. Vaughn, 228 F.3d 178, 186 (3d Cir.
2000).

The Appellate Division reviewed the evidence with explicit
reference to the elements of the criminal offenses as defined by
state law.  The decision of the Appellate Division was neither
contrary to, nor an unreasonable application of, clearly
established federal law, nor was it based on an unreasonable
determination of the facts in light of the evidence presented.
Petitioner is not entitled to relief on this claim.

B.   Jury Instructions

Petitioner asserts generally that the jury instructions were
erroneous and confusing and that the trial judge "failed to give
certain relevant instructions to the jury and erred in other
charges that were given."  (Petition, ¶ 12(B).)  The Court
construes this claim as asserting the same claims asserted in
state court, and rejected, on direct appeal.

> Colvin argues that the judge erred by failing to
> give certain jury charges and that the charges given
> contained error.
>
> It is axiomatic that appropriate instructions to
> the jury on the law are essential for a fair trial.
> State v. Collier, 90 N.J. 117, 122 (1982); State v.
> Green, 86 N.J. 281, 287 (1981).  Nevertheless, a party
> is not entitled to have the jury instructed in his own
> words.  State v. Thompson, 59 N.J. 396, 411 (1971).  We
> examine the charge in its entirety to determine whether
> it fairly sets forth the relevant and controlling legal
> principles.  State v. Freeman, 64 N.J. 66, 69 (1973);
> State v. Gallicchio, 44 N.J. 540, 549 (1965).

During deliberations the jury asked for copies of the legal explanations of the law, Jamal McNeal's testimony, Mrs. Vasquez's testimony, and McNeal's statement to the police.  In response, the judge asked for specific questions about the law due to the length of the instructions, and then directed a read-back of the requested testimony.  The jury then asked for a copy of the instructions on the elements of self-defense and justification.

In a third request the jury asked for the legal definition of recklessness and the judge provided it to the jury.  The jury's last request was, "is there a clause or condition included in the charge of aggravated assault/bodily injury with a deadly weapon which mandates that the actual victim must be the intended victim?"  In response, the judge read a portion of the aggravated assault charge.

After the jury's verdict was announced, defense counsel declined the judge's offer to poll the jury.

Colvin argues that the judge's failure to charge on "imperfect" self-defense to negate elements of the charge or lesser included offenses was reversible error.

In order to establish a justification defense there must be an honest and reasonable belief in the necessity to use force.  State v. Bowens, 108 N.J. 622, 630 (1987); State v. Hines, 303 N.J. Super. 311, 323 (App. Div. 1997).  Imperfect self-defense means "an honest subjective belief on the part of the killer that his or her actions were necessary for his or her safety, even though an objective appraisal by reasonable people would have revealed not only that the actions were unnecessary, but also that the belief was unreasonable."  Bowens, supra (108 N.J. at 628).  Instructions on passion or provocation in essence provide an imperfect self-defense instruction because both negate or rebut malice.  Id. at 627; state v. Kelly, 97 N.J. 178, 219 (1984).

Because the criminal code does not provide an independent category of justification for imperfect self-defense, a trial judge "need not charge separately that 'imperfect self-defense would serve to reduce murder to an unspecified degree of manslaughter.'"

State v. Coyle, 119 N.J. 194, 228 (1990) (quoting
Bowens, supra (108 N.J. at 637)).  Coyle found no error
in the omission of a charge on imperfect self-defense
when the charges on purposeful murder, aggravated
manslaughter, reckless manslaughter and
passion/provocation manslaughter properly encompassed
all the issues.  Ibid.  Likewise, there was no error in
refraining from charging the jury on "imperfect" self-
defense in the case before us because no such charge
was required.

Colvin next argues that it was error to not
specifically advise the jury that defendant did not
have to wait for an attack by King or Freeman before
acting to defend himself.

The judge must instruct on self-defense "if any
evidence raising the issue is adduced, either in the
State's or the defendant's case. . . ."  Kelly, supra
(97 N.J. at 200); State v. Bryant, 288 N.J. Super. 27,
35 (App. Div.), certif. denied, 144 N.J. 589 (1996).
Once evidence "of self-defense is adduced, ... the jury
must be instructed that the State is required to prove
beyond a reasonable doubt that the self-defense claim
does not accord with the facts. . . ."  Kelly, supra
(97 N.J. at 200).

The judge instructed the jury on self-defense and
reminded it of the State's burden of proof.  Colvin's
argument that the judge did not specifically inform the
jury that he did not have to wait for an attack by King
or Freeman before acting to defend himself is without
merit.  In the context of the entire charge, the
judge's instructions were accurate and sufficient.
State v. Jordan, 147 N.J. 409, 422 (1997); Thompson,
supra, (59 N.J. at 411).

Colvin also argues that the judge erred in
rejecting the specific language he requested from State
v. Aguiar, 322 N.J. Super. 175, 184 (App. Div. 1999),
regarding the use of King's prior conviction to
determine that the victim was the aggressor.  In
charging the jury, the judge stated:

You've heard testimony in this case that
Anthony King was convicted of armed robbery
in 1991.  You may consider that conviction in
deciding whether Anthony King was the

13

aggressor with regard to the incident of December 9 [sic], '99 that is the subject matter of the charges in the indictment.

In making that determination, you may consider the age and nature of the conviction and all of the other evidence in the case in deciding what weight to give to that conviction.

Under <u>Aquiar</u> a victim's conviction of a violent crime may be admitted to allow the argument that it was more likely that the victim was using unlawful force, which if true, would give rise to a justified use of self-defense.  However, a victim's conviction may be excluded if, because of its remoteness, its probative value is substantially outweighed by its prejudicial effect.  <u>Ibid.</u>  Here, the judge did not err in his ruling rejecting the specific language Colvin requested.

Colvin next argues that the self-defense charge was erroneous because it was given after the charges for each offense and lesser included offenses.  We reject Colvin's contention.  The order in which the instructions were provided to the jury was appropriate. The judge prefaced the self-defense charge with the reminder that it applied to the alleged homicide of King and the alleged assault of Freeman.  In addition, when charging the jury on the weapon charge, the judge referenced self-defense.

Colvin also contends that the jury charges were erroneous because the jury was not clearly advised that he should be acquitted of homicide and possession of a weapon for an unlawful purpose if it were determined that he acted in self-defense.

In charging the jury on self-defense the judge stated:

Self-defense exonerates a person who uses force in the reasonable belief that such action was necessary to prevent his or her death or serious injury even though his belief was later proven mistaken.

The judge also stated:

14

The State has the burden to prove to you beyond a reasonable doubt that the defense of self-defense is untrue.  This defense, you'll remember, applies only if all of the conditions or elements described previously exist.

Consequently, the defense must be rejected if the State disproves any one of the conditions beyond a reasonable doubt.

*          *          *

If the State does not satisfy this burden and you have a reasonable doubt, then it must be resolved in favor of the defendant and you must allow the claim of self-defense and acquit the defendant on the particular charge or charges.

The charge as given was accurate as a whole.  <u>State v. Anderson</u>, 35 N.J. 472, 498 (1961).

Colvin also argues that the judge erred in failing to instruct the jury regarding a course of ill treatment by King in connection with his self-defense claim.

A continuing course of ill treatment, which the accused reasonably believes is likely to continue, may constitute adequate provocation.  <u>State v. Erazo</u>, 126 N.J. 112, 124-125 (1991); <u>Kelly</u>, <u>supra</u> (97 N.J. at 218-219).  <u>See State v. Mauricio</u>, 117 N.J. 402, 411-413 (1990).  The prior confrontations between Colvin and King raised a provocation issue.  The judge did instruct the jury on a course of ill treatment regarding the passion-provocation manslaughter charge. As a whole, the charge was proper and adequately instructed the jury to consider alleged prior abuse by King and its effect on Colvin, as well as the events on the occasion of the homicide.

Colvin argues that there was no basis in the record to charge the jury on aggravated manslaughter and reckless manslaughter as lesser included offenses to murder and passion/provocation manslaughter. However, where the facts indicate that the jury could find defendant guilty of a lesser included offense, the

15

judge should charge the lesser included offense even if defendant does not request the charge.  See State v. Purnell, 126 N.J. 518, 530-532 (1992).

A person commits murder if "the actor purposely or knowingly" causes death or serious bodily injury resulting in death, N.J.S.A. 2C:11-3(1) and (2), while first degree aggravated manslaughter occurs "when [t]he actor recklessly causes death under circumstances manifesting extreme indifference to human life." N.J.S.A. 2C:11-4a.  If the death is caused recklessly it would be second degree manslaughter.

Here, the evidence supported a finding that Colvin intentionally shot King and Freeman.  It also supported a conclusion that the death was based on aggravated manslaughter due to provocation.  Thus, the jury could have found that Colvin's conduct was not practically certain to cause death, but that he was aware of a probability that death would result evidencing extreme indifference to human life.  The jury found him guilty of the lesser included offense of aggravated manslaughter.  See Bowens, supra (108 N.J. at 637-638). Based on the evidence the judge properly charged aggravated manslaughter and reckless manslaughter as lesser included offenses to the murder and passion/provocation manslaughter charges.  There was a rational basis for the jury to acquit Colvin of murder and to convict him of a lesser included offense.

Colvin argues that the judge's instruction regarding attempted aggravated assault was capable of being misconstrued by the jury as a reminder that the State had already proven the attempt was made either purposely or knowingly, rather than the jury's need to find an attempt was made.

In his instructions the judge stated:

   And you'll remember attempting to cause serious bodily injury had been shown to be done either purposely or knowingly, and those terms were previously defined to you. . . .

   If you find that the State has failed to prove beyond a reasonable doubt that the defendant attempted to cause serious bodily injury to another, then you must find the

16

defendant not guilty of this aggravated
assault.

     If you find the defendant guilty of
either attempting or causing serious bodily
injury, then you go no further on this
particular count.  This is Count 4. . . .

     A person is guilty of aggravated assault
if he purposely or knowingly causes bodily
injury to another with a deadly weapon.
(emphasis added).

Colvin's contention is without merit.

     In a similar vein, defendant's contention that the
judge erred in self-defense instructions by making
reference to whether Colvin's use of force was
"immediately necessary" on the "present occasion"
without giving definitions of those terms is without
merit.  R. 2:11-3(e)(2).

     Colvin also argues that the judge's instructions
regarding the prior inconsistent statements of the
State's witnesses was confusing and that the judge
should have provided the jury with the list of factors
in State v. Gross, 121 N.J. 1, 10 (1990).

     When instructing the jury on the factors to be
considered when weighing the prior inconsistent
statements of the State's witnesses, the judge stated:

     Before deciding whether the prior
inconsistent statement or omitted statement
reflects the truth or impeaches the
credibility, in all fairness you will want to
consider all of the circumstances under which
the statement or the failure to disclose and
in the context in which it was you would
expect the witness to make a statement like
the witness made at trial occurred.

     The charge gave the jury the full range of facts
bearing on the probative worth of the prior
inconsistent statements.  It adequately instructed the
jury to consider the reliability of the prior
inconsistent statement in terms of the witness's

credibility in its consideration and determination of all of the evidence.

Colvin also argues that the judge erred in instructing the jury regarding his statements to the police and contends that the jury should have been instructed in accordance with Model Criminal Jury Charge, "Statement by Defendant (Where Admissible for Credibility Purposes Only," which states:

> ... This statement has been introduced by the prosecution not as evidence of defendant's guilt of the crime charged, but to affect credibility on condition that the jury first determine that the statement was made.... prior to your considering this statement for the limited purposes of affecting the defendant's credibility ... If you find that the statement was made it may be considered ... not of evidence of guilt....  The extent to which defendant's credibility is affected by such inconsistencies, if any, is for your to determine.  Consider the materiality and relationship of such contradictions to the entire testimony and all the evidence in the case.

Colvin's contention is without merit.  In instructing the jury as to Colvin's oral and written statements to the police the judge properly stated:

> There is for your consideration in this case a certain written statement and oral statement allegedly made by the defendant to the police.  It is your function to determine whether or not the statement was actually made by the defendant and if made whether the statement or any portion of it is credible.

> In considering whether or not the statement is credible, you should take into consideration the circumstances and the facts as to how the statement was made as well as all other evidence in the case relating to that issue.

> If after a consideration of all of these factors you determine that the statement was

18

not actually made or that the statement is not credible then you must disregard the statement completely.

Finally, Colvin argues that the charges were erroneous because the judge neither referred to the facts nor related the instructions to the facts of the case for the aggravated manslaughter, reckless manslaughter lesser included offenses and the self-defense instructions.

To assist jurors in making factual findings, courts sometimes comment on the evidence. Village of Ridgewood v. Sreel Inv. Corp., 28 N.J. 121, 128 (1958). "Ordinarily, the better practice is to mold the instruction in a manner that explains the law to the jury in the context of the material facts of the case." State v. Concepcion, 111 N.J. 373, 379 (1988). But not every failure to do so is fatal. State v. Baker, 303 N.J. Super. 411, 414 (App. Div.), certif. denied, 151 N.J. 470 (1997). A failure to relate the applicable law to the specific facts of the case is not reversible error if a reviewing court concludes that the model jury instruction adequately explained the law. See, e.g., State v. Morton, 155 N.J. 383, 421-423 (1998), cert. denied, 532 U.S. 931, 121 S.Ct. 1380, 149 L.Ed.2d 306 (2001); State v. Cooper, 151 N.J. 26, 379-381 (1997), cert. denied, 528 U.S. 1084, 120 S.Ct. 890, 145 L.Ed. 2d 681 (2000).

A corollary to the right of a judge to comment on the evidence, is the right not to comment. State v. Biegenwald, 106 N.J. 13, 44 (1987). Indeed, as a general rule, summarizing the strengths and weaknesses of the evidence presents potential pitfalls and is more appropriately left to the attorneys to argue in summation. State v. Walker, 322 N.J. Super. 535, 551 (App. Div.), certif. denied, 162 N.J. 487 (1999). The attorneys are advocates for the respective sides, while the judge is a neutral adjudicator. State v. Avena, 281 N.J. Super. 327, 336 (App. Div. 1995). Judges may add specific factual references to instructions when necessary for clarity or when required in the interest of justice. State v. Parker, 33 N.J. 79, 94 (1960). It is left to the judge's sound discretion to decide on a case-by-case basis when and how to comment on the evidence. State v. Robinson, 165 N.J. 32, 45 (2000).

> Here, the judge did not mistakenly exercise his
> discretion and there is no basis to find any error.

(Appellate Division Opinion at 6-19, Sept. 26, 2003.)

Petitioner has not pointed to any specific alleged error in the decision of the Appellate Division.

Generally, a jury instruction that is inconsistent with state law does not merit federal habeas relief.  Where a federal habeas petitioner challenges jury instructions given in a state criminal proceeding,

> [t]he only question for us is "whether the ailing
> instruction by itself so infected the entire trial that
> the resulting conviction violates due process."  It is
> well established that the instruction "may not be
> judged in artificial isolation," but must be considered
> in the context of the instructions as a whole and the
> trial record.  In addition, in reviewing an ambiguous
> instruction ..., we inquire "whether there is a
> reasonable likelihood that the jury has applied the
> challenged instruction in a way" that violates the
> Constitution.  And we also bear in mind our previous
> admonition that we "have defined the category of
> infractions that violate 'fundamental fairness' very
> narrowly."  "Beyond the specific guarantees enumerated
> in the Bill of Rights, the Due Process Clause has
> limited operation."

Estelle v. McGuire, 502 U.S. 62, 72-73 (1991) (citations omitted).  Thus, the Due Process Clause is violated only where "the erroneous instructions have operated to lift the burden of proof on an essential element of an offense as defined by state law."  Smith v. Horn, 120 F.3d 400, 416 (3d Cir. 1997).  See also In re Winship, 397 U.S. 358, 364 (1970) ("the Due Process Clause protects the accused against conviction except upon proof beyond

a reasonable doubt of every fact necessary to constitute the crime with which he is charged"); Sandstrom v. Montana, 442 U.S. 510, 523 (1979) (jury instructions that suggest a jury may convict without proving each element of a crime beyond a reasonable doubt violate the constitutional rights of the accused).

Where such a constitutional error has occurred, it generally is subject to "harmless error" analysis. Smith v. Horn, 120 F.3d at 416-17; Neder v. United States, 527 U.S. 1, 8-11 (1999). "[I]f the [federal habeas] court concludes from the record that the error had a 'substantial and injurious effect or influence' on the verdict, or if it is in 'grave doubt' whether that is so, the error cannot be deemed harmless." Id. at 418 (citing California v. Roy, 519 U.S. 2, 5 (1996)).  In evaluating a challenged instruction,

> a single instruction to a jury may not be judged in
> artificial isolation, but must be viewed in the context
> of the overall charge.  If the charge as a whole is
> ambiguous, the question is whether there is a
> reasonable likelihood that the jury has applied the
> challenged instruction in a way that violates the
> Constitution.

Middleton v. McNeil, 541 U.S. 433, 437 (2004) (internal quotations and citations omitted).

However, a jury instruction that "reduce[s] the level of proof necessary for the Government to carry its burden [of proof beyond a reasonable doubt] is plainly inconsistent with the

constitutionally rooted presumption of innocence." <u>Cool v.</u>
<u>United States</u>, 409 U.S. 100, 104 (1972).  "[T]rial courts must
avoid defining reasonable doubt so as to lead the jury to convict
on a lesser showing than due process requires." <u>Victor v.</u>
<u>Nebraska</u>, 511 U.S. 1, 22 (1994); <u>see also</u> <u>Cage v. Louisiana</u>, 498
U.S. 39, 41 (1990).  As the Supreme Court explained in <u>Victor</u>,

> so long as the court instructs the jury on the
> necessity that the defendant's guilt be proved beyond a
> reasonable doubt, the Constitution does not require
> that any particular form of words be used in advising
> the jury of the government's burden of proof.  Rather,
> taken as a whole, the instructions [must] correctly
> conve[y] the concept of reasonable doubt to the jury.

<u>Victor</u>, 511 U.S. at 6 (citations and internal quotation marks
omitted).

"[A] misdescription of the burden of proof ... vitiates <u>all</u>
the jury's findings. <u>Sullivan v. Louisiana</u>, 508 U.S. 275, 281
(1993) (emphasis in original).  Such an error is considered
structural and thus is not subject to harmless error review.  <u>See</u>
<u>id.</u> at 280-82.  <u>But see</u> <u>Neder v. United States</u>, 527 U.S. 1, 8-11
(1999) (applying harmless-error analysis where jury was not
instructed on an element of an offense).

Here, the Appellate Division found that the jury
instructions complied with state law.  None of the challenged
instructions operates to lift the burden of proof on an essential
element of the claim or otherwise violates Petitioner's due
process rights.  The decision of the Appellate Division was

neither contrary to, nor an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented. Petitioner is not entitled to relief on this claim.

C.   Sentencing

A federal court's ability to review state sentences is limited to challenges based upon "proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigencies." See Grecco v. O'Lone, 661, F.Supp. 408, 415 (D.N.J. 1987) (citation omitted).  Thus, a challenge to a state court's discretion at sentencing is not reviewable in a federal habeas proceeding unless it violates a separate federal constitutional limitation. See Pringle v. Court of Common Pleas, 744 F.2d 297, 300 (3d Cir. 1984). See also 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67 (1991); Lewis v. Jeffers, 497 U.S. 764, 780 (1990).  Petitioner's claims are based upon the Sixth Amendment right to trial by jury.

1.   Sentences Greater Than Presumptive Term

Petitioner contends that the trial judge improperly sentenced him to terms greater than the presumptive term and to a discretionary period of parole ineligibility, in violation of the rule announced in Blakely v. Washington, 542 U.S. 296 (2004).  On appeal from the denial of post-conviction relief, the Appellate Division rejected this claim, on the grounds that the Supreme

23

Court of New Jersey has held that the <u>Blakely</u> rule is not
entitled to retroactive effect, citing <u>State v. Natale</u>, 184 N.J.
458 (2005).  (Opinion of Appellate Division, Oct. 13, 2006.)

In <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 471, 490 (2000),
pursuant to the Sixth Amendment right to trial by jury, the
Supreme Court held that "[o]ther than the fact of a prior
conviction, any fact that increases the penalty for a crime
beyond the prescribed statutory maximum must be submitted to a
jury, and proved beyond a reasonable doubt."  In <u>Blakely v.
Washington</u>, 542 U.S. 296 (2004), the Supreme Court overturned a
sentence imposed under Washington state's sentencing system,
explaining that "the relevant statutory maximum is not the
maximum sentence a judge may impose after finding additional
facts, but the maximum he may impose without any additional
findings."  542 U.S. at 302 (internal quotations omitted).  Most
recently, in <u>United States v. Booker</u>, 543 U.S. 220 (2005), the
Supreme Court applied the rule of <u>Apprendi</u> to the United States
Sentencing Guidelines, finding the Guidelines unconstitutional,
and rendering them merely advisory, rather than mandatory.

In <u>State v. Natale</u>, 184 N.J. 458 (N.J. 2005), the Supreme
Court of New Jersey evaluated the constitutionality of the New
Jersey sentencing scheme in light of the <u>Apprendi</u> line of cases.

> Our Code provisions make clear that, before any
> judicial factfinding, the maximum sentence that can be
> imposed based on a jury verdict or guilty plea is the
> presumptive term.  Accordingly, the "statutory maximum"

> for <u>Blakely</u> and <u>Booker</u> purposes is the presumptive
> sentence.

<u>Natale</u>, 184 N.J. at 484.  Because the Code's system allows for

sentencing beyond the statutory maximum presumptive term, the

Supreme Court of New Jersey found the state sentencing system

unconstitutional and determined that the appropriate remedy would

be to follow the lead of <u>Booker</u> and abolish the presumptive

terms.  "Without presumptive terms, the 'statutory maximum'

authorized by the jury verdict or the facts admitted by a

defendant at his guilty plea is the top of the sentencing range

for the crime charged, <u>e.g.</u>, ten years for a second-degree

offense."  <u>Natale</u>, 184 N.J. at 487 (citation omitted).  The

Supreme Court of New Jersey held that the rule it announced in

<u>Natale</u> is applicable retroactively only to cases in the direct

appeal pipeline as of the date of that decision, August 2, 2005.

<u>Natale</u>, 184 N.J. at 494.  Petitioner had already concluded his

direct appeals by the date of the <u>Natale</u> decision; thus, the

<u>Natale</u> decision did not entitle him to relief.

Similarly, the Court of Appeals for the Third Circuit

generally has held that the rules announced in the <u>Apprendi</u> line

of cases are not applicable retroactively to cases on federal

collateral review.  <u>See generally</u> <u>In re Olopade</u>, 403 F.3d 159 (3d

Cir. 2005) (finding that the decision of the supreme Court in

<u>Booker</u> does not apply retroactively to cases on collateral

review); <u>United States v. Swinton</u>, 333 F.3d 481 (3d Cir.), <u>cert.</u>

25

denied, 540 U.S. 977 (2003) (holding that Apprendi does not apply retroactively to cases on collateral review); In re Turner, 267 F.3d 225 (3d Cir. 2001) (holding that Apprendi does not apply retroactively to cases on collateral review). See also United States v. Price, 400 F.3d 844, 849 (10th Cir.), cert. denied, 126 S.Ct. 731 (2005) (Blakely does not apply retroactively to cases on collateral review).   Thus, the Appellate Division's decision is neither contrary to nor an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States.   Petitioner is not entitled to relief on this claim.

     2.  <u>Consecutive Sentences</u>

     In seeking post-conviction relief in state court, and here, Petitioner alleged that the imposition of consecutive sentences violated his right to a jury trial, because the decision to impose consecutive sentences was based upon the trial judge's reliance upon facts not found by a jury.   See State v. Yarbough, 100 N.J. 627 (1985) (establishing standards to guide the exercise of judicial discretion in imposition of consecutive sentences). (Brief on Behalf of Defendant-Appellant, On Appeal from an Order Denying Petition for Post-Conviction Relief, at 19-21.)   This is another variation of the Sixth Amendment Apprendi/Blakely/Booker claim.

The Appellate Division characterized Petitioner's claim as one that "the trial judge abused his discretion and misapplied the guidelines set forth in State v. Yarbough ... ."  The Appellate Division held that, "This argument could have been raised on direct appeal and was, thus, properly found by the trial judge to be an inadequate ground for the issuance of post-conviction relief."  (Opinion of Appellate Division at 5 (citing N.J.Ct.R. 3:22-4)[2], Oct. 13, 2006.)

Only under very limited circumstances may a federal court consider a claim that is procedurally barred in state court.

> A procedural default occurs when a prisoner's federal claim is barred from consideration in the state courts by an "independent and adequate" state procedural rule. See, e.g., Doctor[ v. Walters, 96 F.3d 675, 683 (3d Cir. 1996)]. Federal courts may not consider the merits of a procedurally defaulted claim unless the applicant establishes "cause" to excuse the default and actual "prejudice" as a result of the alleged violation of the federal law or unless the applicant demonstrates that failure to consider the claim will result in a fundamental "miscarriage of justice." Coleman v.

---

[2] Rule 3:22-4, governing post-conviction relief, provides in pertinent part that:

> Any ground for relief not raised in a prior proceeding under this rule, or in the proceedings resulting in the conviction, ... or in any appeal taken in any such proceedings is barred from assertion in a proceeding under this rule unless the court on motion or at the hearing finds (a) that the ground for relief not previously asserted could not reasonably have been raised in any prior proceeding; or (b) that enforcement of the bar would result in fundamental injustice; or (c) that denial of relief would be contrary to the Constitution of the United States or New Jersey.

Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 115
L.Ed.2d 640 (1991).

Carpenter v. Vaughn, 296 F.3d 138, 146 (3d Cir. 2002).

On habeas review of state prisoner claims, a federal court
"will presume that there is no independent and adequate state
ground for a state court decision when the decision 'fairly
appears to rest primarily on federal law, or to be interwoven
with the federal law, and when the adequacy and independence of
any possible state law ground is not clear from the face of the
opinion.'" Coleman, 501 U.S. at 734-35 (quoting Michigan v.
Long, 463 U.S. 1032, 1040-41 (1983)).[3] Only a "firmly
established and regularly followed state practice" is adequate to
prevent subsequent habeas review in federal court. James v.
Kentucky, 466 U.S. 341, 348-351 (1984). See also Lee v. Kemna,
534 U.S. 362, 376 (2002) ("Ordinarily, violation of 'firmly
established and regularly followed' state rules ... will be
adequate to foreclose review of a federal claim." (citations
omitted)). Generally speaking, "[a] state court's refusal to
address a prisoner's federal claims because he has not met a
state procedural requirement is both independent and adequate."
Cabrera v. Barbo, 175 F.3d 307, 312 (3d Cir. 1999) (citations
omitted).

_____

[3] A state court's reliance on a procedural bar as an
alternate holding is sufficient to trigger the "cause" and
"prejudice" test. See United States ex rel. Caruso v. Zelinsky,
689 F.2d 435, 440 (3d Cir. 1982).

The "cause" standard requires a petitioner to show that some objective factor external to the defense impeded his efforts to comply with the state procedural rule. See Coleman, 501 U.S. at 752 (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)). In the absence of a Sixth Amendment violation, the petitioner bears the risk in federal habeas for all attorney errors made in the course of the representation. Coleman, 501 U.S. at 754. Neither a pro se prisoner's ignorance of the procedural rule nor inadvertence satisfies the cause standard. Murray at 485-87. Failure of the state court to "bend the rules" for a pro se litigant is not cause. Caswell v. Ryan, 953 F.2d 853, 862 (3d Cir. 1992).

To establish "prejudice," a petitioner must prove "'not merely that the errors at ... trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimension.'" Murray v. Carrier, 477 U.S. 478, 494 (1986) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)).

In the alternative, in order to establish that failure to review an otherwise procedurally defaulted claim will result in a "miscarriage of justice," a petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Carrier, 477 U.S. at 496. "Thus, to establish a miscarriage of justice, the petitioner must

29

prove that it is more likely than not that no reasonable juror would have convicted him." <u>Werts</u>, 228 F.3d at 193 (citing <u>Schlup v. Delo</u>, 513 U.S. 298, 326 (1995)).

Petitioner does not contend that Rule 3:22-4 is anything but a "firmly established and regularly followed state practice," and case law suggests that the rule is firmly established and regularly followed, the notable exception involving claims of ineffective assistance of counsel. <u>See</u>, <u>e.g.</u>, <u>Cabrero v. Barbo</u>, 175 F.3d 307, 312-14 (3d Cir. 1999) (dicta). Thus, the PCR court denied relief on an independent and adequate state ground, precluding review here of Petitioner's claim unless he can meet the "cause" and "prejudice" standard or demonstrate that failure to consider the claim will result in a miscarriage of justice.

Here, Plaintiff makes no effort to meet the cause and prejudice standard. Nor does it appear that failure to consider Petitioner's claims will result in a miscarriage of justice. Thus, the claim is procedurally barred in this Court. In any event, Petitioner is not entitled to relief on this claim because, as discussed above, the rules announced in the <u>Apprendi</u> line of cases are not applicable retroactively to cases on federal collateral review.

IV.   <u>CERTIFICATE OF APPEALABILITY</u>

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be

taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right.

V.   <u>CONCLUSION</u>

For the reasons set forth above, the Petition must be denied.  No certificate of appealability shall issue.  An appropriate order follows.

Peter G. Sheridan
United States District Judge

Dated:  6/10/08

31